STATE, Use of ODHAM, Etc., et al. *v.* SHERMAN, et al.

[No. 124, September Term, 1963.]

*Decided March 12, 1964.*

The cause was argued on 11/13/63 before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

The cause was reargued on 12/2/63 before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT, MARBURY, SYBERT,

JJ., and GRAY, J., Chief Judge of the Seventh Judicial Circuit, specially assigned.

Argued by *LeRoy W. Preston* and *David K. Ebersole, Jr.*, with whom were *O'Connor & Preston* on the brief, for appellants.

Reargued by *LeRoy W. Preston* for appellants.

Argued by *Foster H. Fanseen* and *Milton I. Vogelhut* for appellees.

Reargued by *Milton I. Vogelhut* for appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment entered upon motion under Rule 502 for the determination of an issue of law prior to trial. In effect, the trial court held that a viable child born dead was not a "person" under Code (1957), Art. 67, secs. 1 and 4 (still known as Lord Campbell's Act), or under Code (1957), Art. 93, secs. 18 and 112, authorizing actions by administrators.

The applicable statutes provide as follows:

(Art. 67, sec. 1) "Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, the * * * person who would have been liable if death had not ensued, * * * shall be liable to an action for damages, notwithstanding the death of the person injured * * *."

(Sec. 4) "Every such action shall be for the benefit of the * * * parent * * * of the person whose death shall have been so caused * * *."

(Art. 93, sec. 18) "Whenever any person shall die intestate, * * * letters of administration may forthwith be granted by the orphans' court of the county wherein was the party's mansion house or residence; * * *."

(Sec. 112) "Executors and administrators shall have full power to commence and prosecute any personal action what-

ever, at law or in equity, which the testator or intestate might have commenced and prosecuted, * * * provided, that if the death of the testator or intestate shall have resulted from the wrong for which any such personal action might have been commenced, then the executor or adminstrator shall be entitled to recover the funeral expenses of said testator or intestate, not to exceed, however, the sum of one thousand dollars ($1,000.00), in addition to any other damages recoverable in such actions; * * *."

For present purposes the facts conceded are that the mother of the child, while riding as a passenger with the defendant, Sherman, who was driving a car owned by the defendant, Werner, suffered serious injuries as a result of the negligence of the defendants. Her child, who was a full-term viable child in the ninth month of development, was also injured and was delivered stillborn shortly thereafter.

This Court held in *Damasiewicz v. Gorsuch*, 197 Md. 417 (1951), that a cause of action lay for the negligent blinding of a child *en ventre sa mere*, when suit was brought after its birth for its prenatal injuries. Since that date, many courts have taken the same view, in some instances overruling prior decisions. See *Amann v. Faidy*, 114 N. E. 2d 412 (Ill.) (1953). In 1960, Massachusetts declined to follow the earlier decision by Mr. Justice Holmes in *Dietrich v. Northhampton*, 138 Mass. 14 (1884). *Keyes v. Construction Service Inc.*, 165 N. E. 2d 912 (Mass.). See also *Sinkler v. Kneale*, 164 A. 2d 93 (Pa.), and *Smith v. Brennan*, 157 A. 2d 497 (N. J.), decided in 1960, and *Seattle-First National Bank v. Rankin*, 367 P. 2d 835 (Wash.) (1962) ; see Notes, 10 A.L.R. 2d 1059; 27 A.L.R. 2d 1256. Some courts have extended the rule to non-viable children, a point we need not here consider.

On the precise point before us, where the child is born dead, there are well considered cases that allow recovery. See *Verkennes v. Corniea*, 38 N. W. 2d 838 (Minn.) (1949) ; *Rainey v. Horn*, 72 So. 2d 434 (Miss.) (1954) ; *Mitchell v. Couch*, 285 S. W. 2d 901 (Ky.) (1955) ; *Poliquin v. MacDonald*, 135 A. 2d 249 (N. H.) (1957) ; *Stidam v. Ashmore*, 167 N. E. 2d 106 (Co. Ct. App., Ohio) (1959) ; *Wendt v. Lillo*, 182 F. Supp. 56 (D. C. N. D. Iowa) (1960) ; *Hale v. Manion*, 368

P. 2d 1 (Kan.) (1962); *Gorke v. LeClerc,* 181 A. 2d 448 (Super. Ct., Conn.) (1962). See also *Valence v. Louisiana Power & Light Co.,* 50 So. 2d 847 (Orleans Ct. App., La.) (1951), and *Morgan v. Greggo & Ferrara, Inc.,* 128 A. 2d 557 (Super. Ct., Del.) (1956). There are cases to the contrary, notably in New York. *In re Logan's Estate,* 156 N. Y. S. 2d 49 (Surr. Ct.) (1956), aff'd, 156 N. Y. S. 2d 152, aff'd 3 N. Y. 2d 800, 144 N. E. 2d 644. In that case, however, the child was not viable. Nor was it viable in the cases of *Mace v. Jung,* 210 F. Supp. 706 (D. C. Alaska), or *West v. McCoy,* 105 S. E. 2d 88 (S. C.). But see *In re Scanelli,* 142 N. Y. S. 2d 411 (Surr. Ct.) (1955), and *Muschetti v. Pfizer & Co.,* 144 N. Y. S. 2d 235 (Co. Sup. Ct., 1955). See also *Keyes v. Construction Service, Inc., supra* (Mass.). To the same effect, but upon widely different reasoning, see *Drabbels v. Skelly Oil Co.,* 50 N. W. 2d 229 (Neb.) (1951); *Howell v. Rushing,* 261 P. 2d 217 (Okla.) (1953); *Hogan v. McDaniel,* 319 S. W. 2d 221 (Tenn.) (1958). Cf. *Durrett v. Owens,* 371 S. W. 2d 433 (Tenn.). Recovery has been allowed under a statute dealing with "homicide" in Georgia. *Porter v. Lassiter,* 87 S. E. 2d 100 (1955) (cert. den. Ga. Sup. Ct.). It has been denied by construction of the statutes in California. *Norman v. Murphy,* 268 P. 2d 178 (D. Ct. App., Calif.) (1954). See also Note, 10 A.L.R. 2d 639. The authorities and various reasons for granting or denying recovery are discussed in an article in 110 U. Pa. L. Rev. 554, 556.

We think the decision of this Court in *Damasiewicz* is virtually controlling here. We there recognized that, at least in the case of a viable child, such child had a cause of action when born alive, arising out of a prenatal injury due to the negligent act of a third person. The cause of action arose at the time of the injury and we see no more reason why it should be cut off because of the child's death before birth, than if it died thereafter. The wrongful act would have entitled the "party injured to maintain an action * * * if death had not ensued," and under the plain words of the death statute we think the action survives, or permits the parents to recover, notwithstanding the death of the child.

The holding in *Damasiewicz* was that the cause of action ex-

isted at common law under the facts there presented. Although the point had not been decided previously in Maryland, under the accepted theory the cause of action had been available all along and was in existence when Lord Campbell's Act was enacted in 1852. But even if the holding in *Damasiewicz* had been effective only as a prospective change in the law, it would still be included within the scope of Lord Campbell's Act. We have held that a right conferred upon a sister under the Workmen's Compensation Act gave rise to an action under Lord Campbell's Act, even though it was not mentioned therein and could not have been in the contemplation of the Legislature when Lord Campbell's Act was enacted. See *Storrs et al. v. Mech et al.,* 166 Md. 124, 129; Cf. *Taylor, et al. v. State, use of Mears, et al.,* 233 Md. 406. See also *State v. Nabella,* 176 F. Supp. 668 (D. C. Md.). What is true of Lord Campbell's Act is also true of the statute allowing the child's cause of action to survive and be litigated by an administrator. Both statutes are remedial and designed to close a gap in the preexisting law. See *Van Beeck v. Sabine Towing Co.,* 300 U. S. 342, 350.

It is argued, however, that even if the word "person" in the statute includes a viable child, and the weight of present authority is in favor of recovery, the right of recovery on the part of the unborn child is conditioned upon its being born alive. It is true that some of the cases speak of the child's "being born alive." In *Damasiewicz* (p. 441), Chief Judge Marbury said: "The law itself deals with rights, and since we now know that a child does not continue until birth to be a part of its mother, it must follow that as soon as it becomes alive it has rights which it can exercise." We think this language was not intended to impose a limitation or condition of birth. The wrongful act took place before birth and gave rise to a cause of action at that time. Cf. *Redfern v. Holtite Mfg. Co.,* 209 Md. 106, 111. Naturally a new born babe could not exercise the rights previously acquired, in proper person, since it is under a disability. Nor could a child *en ventre sa mere* exercise such rights. In either case, however, we think the right to damages for the wrong could be exercised on behalf of the child by its next friend, and such rights survive to its parents or administrator.

The appellees rely heavily upon a statement from 2 Harper

& James, *Torts,* p. 1031: "Few cases have allowed separate recovery where the child is not born alive, [footnote omitted] and perhaps this is the fairest and most practical place to draw the line. It, too, would make arbitrary distinctions—as between the child killed just before delivery and one who dies just after —but this sort of thing will be encountered wherever there must be a borderline." We think the weight of present authority draws the line at least at a point where the common law concept of viability is in effect. We think the argument of practical convenience is not a proper test.

> *Judgment reversed and case remanded for further proceedings, costs to abide the result.*

GRAY, J., specially assigned, filed the following dissenting opinion, in which PRESCOTT and MARBURY, JJ., concurred.

This appeal involves a challenging question of whether the parents of a stillborn child can maintain an action under Lord Campbell's Act for their financial loss resulting from the fatal injuries to the child through the alleged negligence of the defendants. There is also the collateral question of whether the personal representative of the child may also recover for its funeral expenses. The majority opinion is predicated upon the determination that a viable child is a "person" within the meaning of the statutes authorizing recovery in these types of cases. This seems to me to be an over-simplification of the problem and I cannot concur therein.

In the solution of this matter we can expect scant help from the English common law because until Lord Campbell's Act, an action of this type died with the victim. There were many purposes, however, for which the common law recognized an infant *en ventre sa mere* as having rights and being subject to the jurisdiction and protection of the courts. The most commonplace such situation is where an infant born posthumously to a testator or an intestate takes property from such decedent. However, the universal rule was that such ability to take was. contingent upon the child being born alive. Is it the effect of the majority opinion that a viable child may be a conduit for prop-

erty even though stillborn? Of course, this factual situation is not involved in the pending case but it certainly can be contended that this is the effect of the present decision, deciding as it does that a viable child is a person and capable of transmitting rights to its parents even though never born alive.

At the threshold of this case we must recognize the fact that a suit involving damages for the death of a stillborn infant projects us into a whole new area of uncertainty. It is manifestly impracticable for anyone to know to what extent, if any, the child may be impaired. Many infants are born with disabling defects, especially in the field of mental development, such as epilepsy, hydrocephalic impairment or arrested mental development. To allow recovery by the parents with respect to the unknown quantity of the financial value to the parents of the life of such a child is, I think, to speculate beyond reason concerning its loss, for it is obviously impractical for anyone to know the potential of a child that never breathed. It seems to me that plaintiffs' claim in this case may be decided upon the actual terms of Lord Campbell's Act. This statute permits an action "whenever the death of a person shall be caused by wrongful act * * * and the act * * * is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, the * * * person who would have been liable if death had not ensued, * * * shall be liable to an action for damages, notwithstanding the death of the person injured * * *." This action is prosecuted upon the theory that the child's mother became involved in an automobile accident through the negligence of the defendants and that in this accident the child was injured and thereupon died. Some time thereafter the child was delivered stillborn. The saving clause of Lord Campbell's Act is "*if death had not ensued*". If in this case death had not ensued the infant could not, while *en ventre sa mere,* bring an action for damages for the injuries sustained. The cause of action accrued at the time of the accident and as the child could not then maintain the action, it seems to me that such action would not revive or survive to the child's parents when after birth it was found that the child was dead.

The majority opinion regards the case of *Damasiewicz v. Gor-*

*such, et al.,* 197 Md. 417, as "virtually controlling" in this case; I do not so regard it. In that case the child had been injured through a tort while *en ventre sa mere.* After birth a suit was instituted through a next friend and a judgment for the defendants on demurrers was reversed. This was a landmark case and I do not quarrel with the result. Here was a child condemned to perpetual blindness through the negligence of another, while being carried in his mother's womb. To have held that he could not recover for his injuries would, I think, have been a monstrous thing. It will be noted in the *Damasiewicz* case that the right of the child to maintain the action was contingent upon its being born alive. There must be a line of demarcation somewhere and it seems to me far more logical and reasonable to draw that line at birth. The *Damasiewicz* case involved a viable child, as does the case now at bar, but there are many categories of deformity which have their origin relatively soon after conception. Are we to permit a Lord Campbell's Act suit where a miscarriage occurs because of some trauma or malpractice in the third month of pregnancy or a suit by an infant after birth because of deformity resulting from negligent action during the third month? I suggest that the majority decision opens a whole "Pandora's box" of ills. The *Damasiewicz* case made it crystal clear that there would have been no cause of action but for the fact that the infant was born alive and had sustained permanent injuries by reason of the alleged negligence. I can find no justification for predicating the recovery in this case upon *Damasiewicz* and at the same time completely abandoning the condition subsequent that the child must be born alive. The whole theory in *Damasiewicz* was that the child had suffered a trauma through the negligence of another which had resulted in its blindness and that when it became able to maintain a suit it might thereupon do so.

I do not regard *Damasiewicz* as a safe precedent for permitting a recovery in this action. As indicated in the majority opinion the recent authorities in the United States seem to be in a state of flux. There are, however, as conceded by the majority opinion, well considered cases in which the right to sue with respect to the injury to a stillborn child, is denied. Among the courts which have so decided are those of Massachusetts

and New York. There are other such cases for which see a note in 10 A.L.R. 2nd, 639, and an article in the 110 Pennsylvania Law Review 554. However, I prefer to rest my views upon the reasoning set forth above rather than to predicate it upon a plebiscite of the current decisions.

The same reasoning applies to the administrator's claim for funeral expenses. Moreover, the father of the child is charged with the responsibility for its funeral expenses and is entitled to reimbursement therefor as a part of any judgment procured by him against the tort feasor in connection with the injury to his wife.

I would affirm the judgment below. Judges Prescott and Marbury have authorized me to say that they concur in this dissent.

PRESCOTT, J., filed the following concurring dissent, in which MARBURY, J., concurred.

I fully concur in the able dissenting opinion of Judge Gray, and, as the precise point decided by the majority is one of first impression in this Court, I desire to add thereto.

The complexities in our law created by the majority holding are real and varied, and they will, in all probability, be with the bench and bar of this State for many years — each year bringing forth new and complicated problems. Apart from the purely speculative nature of the damages recoverable and the highly sensitive "opinions" of experts as to when an unborn child becomes viable (cf. Prosser, *Law of Torts* (2nd ed.)) there will follow as "the night the day" alleged differences created by this holding in our testamentary, inheritance and criminal laws. Also, we shall soon face the question of injury to an unborn child, who is not viable, as some States already have.

The present case load in our Court will not permit the preparation of a comprehensive consideration of the question involved, so, after several short observations, I shall adopt Judge Allen's opinion in the court below as my concurring dissent.

I am in full accord with the decision in *Damasiewicz*, and feel it named and stopped at the proper borderline. The majority opinion cites some eleven cases, which were decided by courts

ranging from a one judge lower court in Delaware to Courts of last resort (only five or six of the cases being decided by Courts of last resort). Several of these cases specifically assert that the holdings therein are the "minority" view. For instance in the *Stidan* case, a three-man divided intermediate Ohio court said: "It would be futile to reconcile the varied and conflicting decisions in different States upon the question of the existence of any right of action for injury to an unborn child. Ohio is committed *to the minority view* (italics added) recognizing such right." And it is generally considered that the view adopted by the majority is the minority rule. See 16 Am. Jur., *Death*, § 75, wherein it is stated: "Although there is authority to the contrary, *the weight of authority* (italics added) supports the rule that, in the absence of a statute, a prenatal injury affords no basis for an action for wrongful death by the parents or personal representative of the child. This is true where the statute giving a right of action for wrongful death is construed as conferring such right only where the injured person could himself have maintained an action for damages had he lived, and a child so injured is regarded as having no right of action." See also 25 C.J.S., *Death*, § 24, and compare annotation, *Action for Death of Unborn Child*, 10 A.L.R. 2d 639; Restatement, *Torts*, § 869; Prosser, *Law of Torts* (2nd ed.) p. 175.

On the other side of the picture, some ten states have decided that a recovery under the circumstances here involved would be improper, and another has also indicated that the child must be born alive in order for the action to lie (*Daley v. Meier*, 178 N. E. 2d 691 [Ill.]). *Norman v. Murphy*, 268 P. 2d 178 (Cal.); *Keys v. Construction Service, Inc.*, 165 N. E. 2d 912 (Mass.); *Drabbels v. Skelly Oil Co.*, 50 N. W. 2d 229 (Neb.); *In re Logan's Estate*, 4 Misc. 2d 283, 156 N. Y. S. 49, 3 N. Y. 2d 800, 144 N. E. 2d 644; *In re Scanelli*, 142 N. Y. S. 2d 411; *Muschetti v. Charles Pfizer & Co.*, 208 Misc. 870, 144 N. Y. S. 2d 235; *Howell v. Rushing*, 261 P. 2d 217 (Okla.); *Hogan v. McDaniel*, 319 S. W. 2d 221 (Tenn.); *Shousha v. Matthews Drivurself Service, Inc.*, 358 S. W. 2d 471 (Tenn.); *Stanford v. St. Louis-San Francisco Ry.*, 108 So. 566 (Ala.); *Newman v. City of Detroit*, 274 N. W. 710 (Mich.); *LaBlue*

*v. Specker;* 100 N. W. 2d 445 (Mich.) ; *Gorman v. Budlong,* 49 A. 704 (R. I.) ; *Magnolia Coca Cola Bottling Co. v. Jordan,* 78 S. W. 2d 944 (Texas). The latest case on the precise point herein involved is *Durrett v. Owens,* 371 S. W. 2d 433 (Tenn.), decided October 11, 1963, wherein the Supreme Court of Tennessee, after having previously held just as this Court did in *Damasiewicz,* specifically held that no recovery could be had under the Wrongful Death Statute for injuries to a child *en ventre sa mere* unless the child were born alive.

The majority reject this formidable and respectable line of authorities and the many others which hold that no right of action whatever accrues for prenatal injuries to a child, and adopt for Maryland by judicial decision what is still the minority rule.

I deplore a holding which states that a child *en ventre sa mere* may institute, by its next friend, a suit in the courts of this State before birth, because, among other reasons, if it be desirable to take such an unusual step, I think it should be done by the Legislature and not by the Court of Appeals.

Judge Allen's opinion, with deletions for the sake of brevity, follows:

"The only case decided by our Court of Appeals bearing on the question of a right of action arising out of injuries to an infant while still in its mother's womb, is *Damasiewicz v. Gorsuch,* 197 Md. 417. There a child was born prematurely with the loss of sight in both eyes, as the result of injuries sustained while *en ventre sa mere.* Chief Judge Marbury, speaking for the Court, after a lengthy review of early cases and the decisions of other jurisdictions, decided that the infant, *born alive,* had a cause of action and could sue in his own right (through his father and next friend) for the prenatal injuries so sustained. The opinion contains lengthy quotations from old cases and authorities relating to property, testamentary and criminal law, in which for those purposes the unborn infant was considered as if born.[1]

"There is no point in retracing in detail the history of the authorities and decisions so fully discussed by Chief Judge Mar-

---

1. Subject to the condition of subsequently being born alive, as discussed below.

bury in the *Damasiewicz* case. However, a brief review of the development of the law in this area, with particular references to the decisions which followed *Damasiewicz,* is in order. The view which denied a right of action for injuries sustained by the foetus while in its mother's womb was first expressed in this country by Justice Oliver Wendell Holmes, then sitting on the Supreme Court of Massachusetts, in the case of *Dietrich v. Inhabitants of Northhampton,* 138 Mass. 14 (1884). This was apparently followed uniformly in a number of cases and in many jurisdictions until 1946 when a decision in the District of Columbia (*Bonbrest v. Kotz,* 65 F. Supp. 138), started a reversal of the trend. This case involved the negligent injury during delivery of a child which survived.

"Following *Bonbrest,* was a case from Ohio in 1949, *Williams v. Marion Rap. Tr.,* 152 Ohio St. 114; 87 N. E. 2d 334, which is referred to in the *Damasiewicz* opinion. There, the child who sustained the prenatal injury was *born alive;* and the Court held that a cause of action by it accrued.

"Shortly thereafter, the Ohio Court again considered the matter in *Jasinsky v. Potts,* 92 N. E. 2d 809 (1950) and permitted a wrongful death action for a viable child which died *after birth* from prenatal injuries.

"In 1951, the *Damasiewicz* case was decided. At that time, the majority view still followed *Dietrich.* Our Court took issue with the opinion of Justice Holmes on the applicable rule under the common law :

> 'He (Holmes) based it upon a common law which had no positive existence, but is derived from an isolated statement by Lord Coke, which is itself modified in the same sentence by the suggestion that the law in many cases has consideration for the unborn child *by reason of the expectation of its birth.* The will and inheritance cases recognize the rights of an unborn child, and so do the criminal cases. * * * If we were considering a case of first impression anywhere, we would be unable to find that the common law denied the right.' (Emphasis supplied.)

"Although the Court's decision rested on this legal basis, it

192

is evident that equally persuasive was the "equity" of the infant's claim, the injustice that would result to it if it were denied a right of action. This appears clearly in the following excerpts from the opinion:

> (p. 436) 'In addition to the articles relied on by the Minnesota court,[2] attention may be called to an article in the Harvard Law Review, Vol. 63 (1949-1950), p. 173, in which the cases are discussed and a conclusion is reached that *the fundamental reason for allowing a surviving child a right of action for prenatal injuries is in the injustice of denying it.* It is said that there should be recognized a legal right in the *newborn child* to begin life with a sound body.'
>
> (p. 438) 'By the negligence or the willful misconduct of someone *an unborn child has to go through life* crippled, blind, subject to fits, an imbecile, or otherwise changed from a normal human being. Yet the law provides no means for compensation for such a situation. It is no wonder so many judges have dissented from such decisions, and that some of the latest cases have disregarded them altogether.' (Emphasis supplied.)

"These considerations follow the underlying reason for the rule in will and inheritance cases, that it is for the *benefit of the child.* A suit by the surviving parents or the administratrix certainly does not fall within that category.

"A dissenting opinion by Justice Boggs in the case of *Allaire v. St. Luke's Hospital,* 184 Ill. 359 (1900), although it was at the time a lone voice crying in the wilderness, became many years later the rallying cry for the advocates of the modern view which now has gained ascendancy. The opinion in *Damasiewicz* quotes liberally from Justice Boggs' dissent (pp. 425-427), in which he argues forcefully that during gestation and parturition, a foetus reaches a point of viability at which it 'is capable of independent and separate life.' But his argument for a right of action on behalf of the infant was predi-

---

2. Verkennes v. Corniea, 229 Minn. 365, discussed below.

cated on the child being 'born into the living world.' He also analogized the action in tort to the criminal law:

'Had such injury, though inflicted on the child while in the mother's womb, been sufficient to cause the death of the infant *after it had been born alive,* the common law would have regarded the injury as having been inflicted upon a human being, and punished the perpetrator accordingly; and that being true, why should the infant *which survives* be denied the right to recover damages occasioned by the same injury?' (Emphasis supplied.)

"The concluding quotation from Justice Boggs is that if the foetus is viable when it sustains the injury 'and is *afterwards born and becomes a living human being,* such has a right of action * * *.' (Emphasis supplied.)

"Plaintiffs lay great stress on the following excerpt (erroneously attributed by counsel to Blackstone) from the opinion of Justice Buller in *Thelluson v. Woodford,* (1798-9), 4 Vesey, J. 227, to which Judge Marbury refers:

'The next objection is that, supposing, he meant a child en ventre sa mere, and had expressly said so, yet the limitation is void. Such a child has been considered as a non-entity. Let us see, what this non-entity can do. He may be vouched in a recovery, though it is for the purpose of making his answer over in value. He may be an executor. He may take under the Statute of Distributions. He may take by devise. He may be entitled under a charge for raising portions. He may have an injunction; and he may have a guardian. Some other cases put this beyond all doubt * * *.'

"Then, after a discussion of the earlier cases, the Justice said:

'The Courts have gone further. They have held, that a child en ventre sa mere is to be considered as in being. It is immaterial, therefore, whether he is born, or not.'

"Counsel for plaintiffs contend that the last sentence above quoted indicates that the child en ventre sa mere possessed all of the capacities Justice Buller set out in the first quoted paragraph above, even though it was never born alive. And since our Court of Appeals has used the rights of inheritance of an infant still unborn as an analogy for a right of action in tort, plaintiffs urge that such right should accrue to the parents and administratrix of a child even though still-born.

"I do not accept this argument because in my opinion plaintiffs misread the meaning of the phrase 'whether he is born, or not.' That simply means that it is immaterial *at the time that* the right is asserted for the benefit of the infant, whether it has *then been born,* or is still in its mother's womb; that *as of then* it is considered 'in being.' But it is clear from the authorities that this assumption that the child is considered in esse *is subject to its subsequently being born alive*:

'* * * it is now the well-settled doctrine both in England and in the United States that an unborn infant is to be regarded as in being from the time of conception, for the purpose of taking any estate which is for its benefit * * *.

*'Fiction for Benefit of Child Only.* The fiction is for the interest of the unborn child, and applies only where it will enable the child to take a benefit which, *if born,* he would be entitled to.

*'Existence Inchoate and Conditions.* The existence of a child en ventre sa mere is *inchoate* and *conditional,* and confers no right of property *unless the infant be born alive* after such a period of foetal existence that its continuance in life may reasonably be expected; and *if it* is born dead, or in such an early stage of pregnancy as to be incapable of living, it is to be considered as *if it had never been born or conceived.* Consequently a person claiming property through such a child is bound to establish the fact that it was born alive.' (Emphasis supplied.) *Amer. & Eng. Encyc. of Law,* Vol. XVII, p. 258.

'Biologically speaking, the life of a human being be-

gins at the moment of conception in the mother's womb, and in the law of inheritance this view is adopted, so that if one dies intestate, his unborn child, *if eventually born alive,* and not too soon after conception to be capable of living, inherits equally with its older brothers and sisters; \* \* \*. By a legal fiction or indulgence, a legal personality is imputed to an unborn child as a rule of property for all purposes beneficial to the infant *after his birth,* but not for purposes working to his detriment.' (Emphasis supplied.) *27 Am. Jur.* p. 747, Sec. 3.

'\* \* \* *The only requisites for a taking of a legacy or devise by an unborn child is that it shall be afterward born.* If it is born dead, or in such an early stage of gestation as to be incapable of living, the situation is as if the child had never been conceived or born.' (Emphasis supplied.) *57 Am. Jur.* p. 140, Sec. 154. 'But it must be recollected that the existence of the infant as a real person before birth is a fiction of law, for the purpose of providing for and protecting the child, *in the hope and expectation that it will be born alive* and capable of enjoying those rights which are thus preserved for it in anticipation. \* \* \*

'Although by the civil law of successions, a posthumous child was entitled to the same rights as those who were born in the life time of the decedent, *it was only on the condition that they were born alive,* and under such circumstances that the law presumed they would survive. \* \* \* Children in the mother's womb are considered, in whatever relates to themselves, as if already born; but children born dead, or in such an early state of pregnancy as to be incapable of living although they be not actually dead at the time of their birth, *are considered as if they had never been born or conceived'* (Emphasis supplied). *Marsellis v. Thalhimer,* 1798 N. Y. Chancery Reports, Vol. 11, p. 35.

"In the same year with *Damasiewicz* (1951) the New York Court of Appeals, in *Woods v. Lancet,* 303 N. Y. 349, over-

ruled its earlier decision in *Drobner v. Peters,* 232 N. Y. 220 (1921), and held that a *child born alive* prematurely could bring an action to recover damages for prenatal injuries sustained by it. The Supreme Court of Georgia followed suit in *Tucker v. Carmichael* (1951), 208 Ga. 201, 65 S.E. 2d 909, where the injured foetus *survived birth.* There also, the Court made a comparison with the right of inheritance in the unborn child.

"The following year, in *Amann v. Faidy,* 114 N. E. 2d 413 (1953), Illinois joined the procession by overruling *Allaire v. St. Lukes Hospital, supra,* and allowed recovery by the administratrix of the estate of a viable child, who suffered prenatal injuries and *was thereafter born alive.*

"Missouri also joined this growing list of jurisdictions in *Steggall v. Morris,* 363 Mo. 1224, 258 S. W. 2d 577 (1953), when it sustained the action for injuries to a viable child, *born alive.*

"*Kelly v. Gregory,* 125 N. Y. S. 2d 696 (1953) involved injuries to a non-viable foetus, subsequently *born alive* and recovery by the infant was permitted. But *In re Scanelli,* 142 N. Y. S. 2d 411 (1955), an application for letters of administration of the estate of a stillborn child was denied. Professors John V. Thornton of the N. Y. U. School of Law and Harold F. McNiece of St. Johns University School of Law commented on this question, in an article which appeared in the N. Y. U. *Law Review,* Vol. 30, p. 1621, as follows:

'Commendable decisions in New York during the last few years have recognized that an unborn child, whether viable or not at the time he is injured, may maintain an action for negligence when *he is subsequently born alive.* A case this year involved a father who sought letters of administration on his stillborn child upon the ground that a right of action for negligent injuries to such child existed. The surrogate court distinguished the decisions involving children born alive and denied letters because the person alleged to be a deceased person never had a legal existence. While this reasoning falls into the category of

question-begging, the result achieved may well be correct. *The policy considerations which call for a right of action when a child survives do not necessarily apply in the absence of survival * * *'* (Emphasis supplied).

"Other cases which allowed recovery for prenatal injuries by an infant *born alive* were *Tursi v. New Eng. Windsor Co.,* 19 Conn. 242, 111 A. 2d 14 (1955) ; *Mallison v. Pomeroy,* 205 Ore. 690, 291 P. 2d 225 (1955) ; *Worgan v. Greggo* (Del.), 128 A. 2d 557 (1956). It is significant that in all of them, the Courts found a parallel in the recognition which the law gave to a child's legal existence while *en ventre sa mere* with respect to rights of inheritance, as to which subsequent birth alive was, as I have pointed out above, a necessary condition. In some cases, they drew an analogy with the view of the criminal law in case of a prenatal injury of a foetus, subsequently resulting in its death. But this was not murder, according to Blackstone, but a 'heinous misdemeanor.' Only if the child survived the wound during prenatal life and died *after birth,* could the offense constitute the crime of murder.[3]

"Within recent years the doctrine pronounced in *Bonbrest* has been extended; and six jurisdictions have allowed recovery for the death of the foetus before birth, from injuries sustained by it in its mother's womb when it was viable: *Verken-*

"3. See also dissenting opinion of Justice Boggs in the Allaire case, supra. In this connection, the following from Hochheimer's Criminal Law 2d (1904) p. 371, indicates that in Maryland any analogy to the criminal law would have to be predicated on the child being born alive:

'Homicide—a child is a " 'human being' " whose killing is homicide only when it has been born, i.e. when it has completely proceeded in a living state from its mother's womb. Having breathed is not sufficient, as it may have breathed before being fully born.'

'Abortion—An abortion that results in the death of the woman or of the child after it has passed from her alive is punishable as culpable homicide. The grade of the offense is murder or manslaughter, according to circumstances.' (Emphasis supplied.)

'Aside from this, the reasons which may dictate a ruling in the criminal law, where questions of public policy are involved, do not necessarily operate in tort, where only private rights are concerned.' "

*nes v. Corniea* (1949), 229 Minn. 365, 38 N. W. 2d 838; *Rainey v. Horn* (1954), 72 So. 2d 434 (Miss.) ; *Mitchell v. Couch* (1955), 285 S. W. 2d 901 (Ky.) ; *Poliquin v. McDonald* (1957), 135 A. 2d 249 (N. H.) ; *Stidam, Administratrix v. Ashmore* (1959), 167 N. E. 2d 106 (Ohio) ; *Hale v. Manion* (1962), 368 P. 2d 1 (Kans.).

"An analysis of the Court's opinions in these cases reveals that at least three of them (*Verkennes* (Minn.), *Rainey* (Miss.) and *Poliquin* (N. H.)) indicated clearly that they were founded on analogies to the criminal law and to rights of inheritance under the common law. However, they ignored the fact that regarding an unborn infant in its mother's womb as 'in being' from the time of conception was a *fiction* which the law created for the *benefit of the child;* and it was conditioned upon the child being subsequently *born alive.* They assumed because the foetus was viable at the time of its death, it was therefore a 'human being' or a 'person' or a 'party' *at that time.* In doing so, however, the Courts were attempting to clothe fiction with the garb of fact.

"Proceeding from this faulty premise, the said Courts gave a construction to the applicable statutes of their respective States, which I believe would be strained and unrealistic if it were applied to the equivalent statutes of Maryland. In my opinion, the words 'person,' 'party' or 'decedent' in Articles 67 and 93 of the Maryland Code, *supra,* do not include a child *en ventre sa mere* which is never born alive. Under the rules of statutory construction, the words of a statute are to be taken in their ordinary and familiar signification and import, and regard is to be had to their general and popular use. (*Parkinson v. State,* 14 Md. 184; *Booth v. Campbell,* 37 Md. 522; *Bouse v. Hull,* 168 Md. 1; *State Tax Comm. v. Allied Mtge. Cos.,* 175 Md. 357; *Schmeizl v. Schmeizl,* 186 Md. 371; *Glickfield v. State,* 203 Md. 400; *Blake v. State,* 210 Md. 459; *U. S. v. Swift & Co.,* (Md.), 152 F. Supp. 738; *Bracey v. Luray,* (4th Cir.), 138 F. 2d 8.) It cannot be denied that when we speak of a 'person' or a 'party' in its familiar and generally accepted use, we are referring to a human being actually and completely separated from its mother and alive.

"In *Mitchell* (Ky.) and *Hale* (Kans.), the Courts flatly de-

termined, without resort to analogies, that a viable unborn child is a 'person' under their statutes. Having once arrived at that conclusion, they evidently had no difficulty in allowing recovery.

"The Ohio Court also, in *Stidam,* rules that the viable foetus was a 'person' while still *en ventre sa mere.* It appeared to be greatly influenced by what it considered to be an irreconcilability between the two propositions, that if the death occurred after birth there is a cause of action, but that if it occurred before birth, there was none.

"The answer to this alleged inconsistency is that whenever a line is drawn between liability and non-liability, or between a right of action and none, the demarcation at some point must be arbitrary. Harper & James in their *Law of Torts,* in commenting on this distinction between a surviving and stillborn child, stop short of giving approval to a suit such as presented here. After discussing the rationale of the cases which followed *Bonbrest,* they say (p. 1031) :

> 'What has been said leaves untouched the case where prenatal injury results in death of the child before birth. Here, of course, the mother may recover for her injury including the miscarriage, and the only question is whether the estate of the unborn child may have a separate recovery. To allow it would recognize an interest in being born alive. And however great the spiritual and moral value of such an interest, its claim to pecuniary compensation is far more tenuous and doubtful than that of the child who lives to bear the seal of the defendant's negligence with all the conscious suffering and economic loss it may entail. Few cases have allowed separate recovery where the child is not born alive, and perhaps this is the fairest and most practical place to draw the line. It, too, would make arbitrary distinction—as between the child killed just before delivery and one who dies just after—but this sort of thing will be encountered wherever there must be a borderline.'

"Regardless of what interpretations these Courts may give

to the statutes of their respective States, I can find no justification in following them in construing those of our State. When Article 67 allows recovery for a death resulting from a wrongful act 'such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages thereon'; and Section 112 of Article 93 confers on the Administratrix a right of action provided that 'the death of the * * * intestate shall have resulted from the wrong for which any such personal action might have been commenced,' they can mean only that at some time *prior to death,* the party injured became entitled to maintain an action for damages, which death cut off. I doubt, however, that anyone will seriously contend that the unborn foetus *before death* ever achieved the standing or capacity to sue.

"For the above reasons, I find as a matter of law that the plaintiffs herein have no legal cause of action and I shall therefore enter judgment in favor of the defendants."