DOROTHY WHITE, APPELLANT, v.
HENRY YUP, RESPONDENT.

No. 5706

September 12, 1969                    458 P.2d 617

*Stewart & Horton,* of Reno, for Appellant.

*Leslie A. Leggett,* of Reno, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

Appellant, Dorothy White, sued respondent, Henry Yup, for damages resulting from a two-car collision at a street intersection, when a motor vehicle driven by Yup struck a car driven by Dorothy's husband, William White, in which Dorothy was riding as a passenger. Dorothy prayed in her first cause of action for $112,280.50 in damages for her own

personal injuries suffered as a result of the accident, and in her second cause of action she asked for $10,000 in damages for the wrongful death of her 8-months-old fetus. The case was tried to a jury, and a verdict was returned in favor of Yup.

The collision occurred at the intersection of Locust Street and East Plumb Lane in Reno. The Whites were traveling south on Locust, and Yup was proceeding east on Plumb. At the time of the accident there were no traffic control signals, but there was a stop sign on Locust Street. The evidence is conflicting. William White testified that he came to a complete stop at the sign, then proceeded into the intersection, where Yup's vehicle struck the Whites' car. Yup, on the other hand, maintained that William failed to obey the stop sign and drove in front of Yup's car and that the collision resulted.

Dorothy seeks a reversal of the judgment and a new trial on the ground that the trial judge did not properly instruct the jury. She contends that he committed reversible error when he instructed the jury that her husband's negligence in the operation of his vehicle was imputable to her.[1] We agree that the instruction was improper, and we reverse and remand the case for a new trial.

1. Ever since the case of Fredrickson & Watson Constr. Co. v. Boyd, 60 Nev. 117, 102 P.2d 627 (1940), it has been the law of Nevada that a husband's contributory negligence may not be imputed to his wife so as to preclude her recovery against a third person who has caused her injury. In Fredrickson, the court said, at 122, in quoting from McKay on Community Property ¶ 398 at 296 (2d ed. 1925):

" 'The husband as head of the community sustains the same relation to the wife as at common law, so far as the present question is concerned—he is entitled to her services, and is liable for the expense of her care and cure, and for the violation of these rights he should recover. But neither at common law or by the law of community does he hold the wife's right to personal security and should not be permitted to recover for the violation of this right. It does not belong to him nor to the community. The wife's physical pain and suffering are not his loss nor the loss of the community.' "

---

[1]Instruction No. 7:

If you find by a preponderance of the evidence, that the plaintiff's husband was negligent in the operation of the automobile, such negligence is imputed to the plaintiff.

And the court concluded, at 123:

"From what has been said, it follows that the contributory negligence of the husband cannot be imputed to the wife in this state." See also Choate v. Ransom, 74 Nev. 100, 323 P.2d 700 (1958); Lee v. Baker, 77 Nev. 462, 366 P.2d 513 (1961); NRS 41.170.

Respondent contends that the "Family Purpose Statute," NRS 41.440,[2] enacted in 1957, has changed the rule announced in Fredrickson. He argues that the phrase in the statute, "for all purposes of civil damages", includes all owners of a family vehicle, whether they are plaintiffs or defendants. In other words, the third-party plaintiff or defendant may use NRS 41.440 both as a "sword" (to fix liability on the owner of the vehicle) and as a "shield" (to bar any action brought against him by the owner or any passenger in the vehicle). We do not agree. NRS 41.440 is a "liability" statute, and it in no way abrogates the rule announced in Fredrickson. The very title of the act amending NRS chapter 41 to provide for the "Family Purpose Statute" reads:

"AN ACT to amend chapter 41 of NRS relating to special actions and proceedings by creating new provisions *imposing liability upon* the owner of a motor vehicle for negligent operation thereof by immediate member of family." (*Emphasis* added.) Ch. 37, Stats. Nev. 1957 at 60.

The origin, use, and standard definitions of the family purpose doctrine provide ample evidence that the rule is primarily a plaintiff's device. We reject any attempt to use the doctrine as a defense technique to impute a family member's contributory negligence to the family car owner or a member of the family who as plaintiff is seeking to recover personal or property damages arising when a defendant's automobile collides with a plaintiff's family purpose car.

---

[2]Liability of motor vehicle owner for negligent operation by immediate member of family. Any liability imposed upon a wife, husband, son, daughter, father, mother, brother, sister or other immediate member of a family arising out of his or her driving and operating a motor vehicle upon a highway with the permission, express or implied, of such owner is hereby imposed upon the owner of the motor vehicle, and such owner shall be jointly and severally liable with his or her wife, husband, son, daughter, father, mother, brother, sister or other immediate member of a family for any damages proximately resulting from such negligence or willful misconduct, and such negligent or willful misconduct shall be imputed to the owner of the motor vehicle for all purposes of civil damages.

The defendant in Bartek v. Glasers Provisions Co., 71 N.W.2d 466 (Neb. 1955), unsuccessfully attempted to use the family purpose doctrine as a means of imputing the driver's contributory negligence to the plaintiff, who was the driver's wife. The court declared that the family purpose doctrine does not have for its objective the purpose of defeating a claim for damages by a passenger by imputing the negligence of the driver to such passenger, but instead, as a matter of public policy, has as its purpose the imposition of liability upon the owner of the car being used for family purposes. In Michaelsohn v. Smith, 113 N.W.2d 571, 574 (N.D. 1962), the court said:

"The family purpose doctrine and the financial responsibility statutes, such as those of Iowa and Minnesota, have their origin in an identical public policy, that of giving an injured party, who is free of negligence, a cause of action against a financially responsible defendant. The doctrine was an extension of previously established rules of liability in order to 'advance the dictates of natural justice.' Its application, therefore, should only be coextensive with its purpose. To extend the doctrine to deny the right of a non-negligent car owner to recover from a negligent driver of another car would defeat the public policy the doctrine is intended to serve. It is our view therefore that the negligence of Austin Michaelsohn, if any, may not be imputed to W. E. Michaelsohn." See also Brower v. Stolz, 121 N.W.2d 624 (N.D. 1963).

We agree that the application of the Family Purpose Statute would be defeated if the doctrine were to be used to prevent recovery from a negligent defendant by a nonnegligent plaintiff, and we hold that it has not abrogated the Fredrickson rule. The trial judge committed reversible error when he gave the jury Instruction No. 7, supra, and the case must be reversed and remanded for a new trial.

2. Appellant offered Instruction B,[3] which the trial judge rejected. Respondent had moved prior to trial to dismiss Dorothy's second cause of action, i.e., the claim for damages resulting from the wrongful death of her 8-months-old fetus. The district judge denied the motion. Although that issue is not before us on this appeal, it becomes necessary, because we are remanding the case for a new trial, to consider the

---

[3]Proposed Instruction B:
The contributory negligence, if any, of William White, is no defense to a recovery of damages by plaintiff for the death of the unborn child.

question in order to reach the propriety of proposed Instruction B.

At common law, actions for death did not survive the death of the injured party. W. Prosser, Law of Torts 920 (3d ed. 1964). Consequently, there was no right of action for an injury which resulted in death. Baker v. Bolton, 1 Camp. 493, 170 Eng.Rep. 1033 (1808). To correct this defect, the British Parliament in 1846 adopted Lord Campbell's Act (Fatal Accidents Act, 9 & 10 Vict., ch. 93 [1846]), which most American jurisdictions have followed.

The Wrongful Death Act of Nevada, NRS 41.080, is typical, and reads as follows:

"Liability for death by wrongful act. Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the persons who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony."

The statute sets forth two requirements to maintain a cause of action: (1) the death of a person and (2) the prior right of the deceased to maintain a cause of action had death not ensued.

Because the question raised is whether an action may be allowed where a viable fetus dies prior to birth as the result of an injury, it is necessary to determine whether there is a cause of action in Nevada (1) for prenatal injuries and (2) for the wrongful death of a stillborn child.

## I. PRENATAL INJURIES.

The first case in which the question of recovery for prenatal injuries arose was Dietrich v. Northampton, 52 Am. R. 242 (Mass. 1884), where the court denied the right of action. In Dietrich, a woman in the fourth month of pregnancy fell as a result of a defect in a street. The fall produced a miscarriage, and the child died upon birth. The court held that the child was not a "person" within the statutes that gave a cause of action for negligent death to the administrator of the estate of a deceased person. The court reasoned that, since the mother and the fetus were physically inextricable, they should be considered one entity. This was undoubtedly the medical

view accepted by the law at that time, but it has been altered over the years.

Dietrich has been effectively overruled by Keyes v. Construction Serv., Inc., 165 N.E.2d 912, 915 (Mass. 1960), where the court said:

"We think it advisable that in respect to the subject of prenatal injury the law of this Commonwealth should be in general in harmony with that of the large and growing proportion of the other States. . . . There is no need to reverse the Dietrich decision which doubtless was right when rendered but we recognize that in view of modern precedent its application should be limited to cases where the facts are essentially the same."

The states that now allow recovery for prenatal injuries are: *California:* Scott v. McPheeters, 92 P.2d 678 (Cal.App. 1939), *aff'g per curiam* 93 P.2d 562 (Cal. 1939); *Connecticut:* Prates v. Sears, Roebuck & Co., 118 A.2d 633 (Conn.App. 1955); *Georgia:* Tucker v. Howard L. Carmichael & Sons, 65 S.E.2d 909 (Ga. 1951), and Hornbuckle v. Plantation Pipe Line Co., 93 S.E.2d 727 (Ga. 1956); *Illinois:* Amann v. Faidy, 114 N.E.2d 412 (Ill. 1953); *Louisiana:* Cooper v. Blanck, 39 So.2d 352 (La.App. 1923); *Maryland:* Damasiewicz v. Gorsuch, 79 A.2d 550 (Md. 1951); *Massachusetts:* Keyes v. Construction Serv., Inc., supra; *Mississippi:* Rainey v. Horn, 72 So.2d 434 (Miss. 1954); *Missouri:* Steggall v. Morris, 258 S.W.2d 577 (Mo. 1953); *New Hampshire:* Poliquin v. Macdonald, 135 A.2d 249 (N.H. 1957), and Bennett v. Hymers, 147 A.2d 108 (N.H. 1958);[4] *New Jersey:* Smith v. Brennan, 157 A.2d 497 (N.J. 1960); *New York:* Woods v. Lancet, 102 N.E.2d 691 (N.Y. 1951); *Ohio:* Williams v. Marion Rapid Transit, Inc., 87 N.E.2d 334 (Ohio 1949); *Oregon:* Mallison v. Pomeroy, 291 P.2d 225 (Ore. 1955); *Pennsylvania:* Sinkler v. Kneale, 164 A.2d 93 (Pa. 1960); *Rhode Island:* Sylvia v. Gobeille, 220 A.2d 222 (R.I. 1966); *South Carolina:* Hall v. Murphy, 113 S.E.2d 790 (S.C. 1960); *Tennessee:* Shousha v. Matthews Drivurself Serv., Inc., 358 S.W.2d 471 (Tenn. 1962); *Texas:* Leal v. Pitts Sand & Gravel, Inc., 419 S.W.2d 820 (Tex. 1967); *Washington:* Seattle-First Nat'l Bank v. Rankin, 367 P.2d 835 (Wash. 1962); *West Virginia:* Panagopoulous v. Martin, 295 F.Supp. 220 (S.D.W.Va. 1969).

Amann v. Faidy, supra, at 415 lists the following textual authorities that support the view that a cause of action should

---

[4] In Bennett v. Hymers, a child can recover even if not "viable" when injured in the fetal stage.

lie for prenatal injuries: "Morris, Injuries to Infants En Ventre Sa Mere, 58 Cent. L.J. 143 (1904); Kerr, Action by Unborn Infant, 61 Cent. L.J. 364 (1905); Albertsworth, Recognition of New Interests in Law of Torts, 10 Cal.L.Rev. 461 (1922); Frey, Injuries to Infants En Ventre Sa Mere, 12 St. Louis L. Rev. 85 (1927); Straub, Rights of Action for Prenatal Injuries, 33 Law Notes 205 (1930); James, Scope of Duty in Negligence Cases, 47 N.W. Law Review 778, 786, (1953). See: Notes, 34 Harv.L.Rev. 549 (1921); 6 Cornell L.Q. 341 (1921); 44 Yale L.J. 1468 (1935); 20 Minn.L.Rev. 321 (1936); 36 Mich.L.Rev. 512 (1938); 34 Minn.L.Rev. 65 (1949); 48 Mich.L.Rev. 539 (1950); 35 Cornell L.Q. 648 (1950); 1951 Wis.L.Rev. 518; 50 Mich.L.Rev. 166 (1951); 63 Harv.L.Rev. 173 (1949–50); 2 DePaul Law Rev. 97; Prosser on Torts, sec. 31, pp. 188–190 (1941)."

The states that deny recovery are: *Alabama:* Stanford v. St. Louis-San Francisco Ry. Co., 108 So. 566 (Ala. 1926); *Michigan:* Newman v. City of Detroit, 274 N.W. 710 (Mich. 1937).[5]

Without belaboring the point by an analysis of each of the cases in which recovery was denied, it is sufficient to say that if, by the negligence or the willful misconduct of someone, an unborn child must go through life crippled, blind, subject to fits, or otherwise changed from a normal human being, one must be impressed by the harshness of the result.

Based upon the weight of authority and the modern trend of cases which have considered this problem, we find that in Nevada a cause of action will lie on behalf of a child for prenatal injuries.

## II. ACTION FOR WRONGFUL DEATH OF STILLBORN FETUS.

The second requirement of the statute is the death of a "person." With respect to the facts alleged in the complaint, the question is whether an action is allowed where the fetus is viable at the time of the injury and is stillborn as a consequence thereof.

The development of actions for prenatal injuries resulting

---

[5]The soundness of Newman v. City of Detroit has been severally criticized by the concurring opinion in Estate of Powers v. City of Troy, 156 N.W.2d 530 (Mich. 1968).

in death has not been as rapid as the growth of actions for prenatal injuries not resulting in death. The first case to extend the right of action to prenatal injuries resulting in death was Verkennes v. Corniea, 38 N.W.2d 838 (Minn. 1949). There, the court allowed a right of action for wrongful death where the fetus was viable at the time of the injury and died as a consequence thereof. The fetus was considered a person for the purposes of the action.

A number of courts subsequently passing on the question have held that an action for the wrongful death of an unborn child is maintainable where the fetus was viable at the time of the injury. At present they are: *Connecticut:* Gorke v. Le Clerc, 181 A.2d 448 (Conn.App. 1962); *Delaware:* Worgan v. Greggo & Ferrara, Inc., 128 A.2d 557 (Del.App. 1956); *Georgia:* Porter v. Lassiter, 87 S.E.2d 100 (Ga.App. 1955); *Iowa:* Wendt v. Lillo, 182 F.Supp. 56 (N.D. Iowa 1960); *Kansas:* Hale v. Manion, 368 P.2d 1 (Kan. 1962); *Kentucky:* Mitchell v. Couch, 285 S.W.2d 901 (Ky. 1955); *Maryland:* State, Use of Odham v. Sherman, 198 A.2d 71 (Md. 1964); *Minnesota:* Verkennes v. Corniea, supra; *Mississippi:* Rainey v. Horn, supra; *New Hampshire:* Poliquin v. Macdonald, supra; *Ohio:* Stidam v. Ashmore, 167 N.E.2d 106 (Ohio App. 1959); *South Carolina:* Fowler v. Woodward, 138 S.E.2d 42 (S.C. 1964), and Todd v. Sandidge Constr. Co., 341 F.2d 75 (4th Cir. 1964); *West Virginia:* Panagopolous v. Martin, supra; *Wisconsin:* Kwaterski v. State Farm Mut. Auto Ins. Co., 148 N.W.2d 107 (Wis. 1967).

It has been stated in the following cases that an action will not lie for the wrongful death of a stillborn child: *California:* Norman v. Murphy, 268 P.2d 178 (Cal.App. 1954); *Massachusetts:*[6] Keyes v. Construction Serv., Inc., supra; *Michigan:* Estate of Powers v. City of Troy, supra (Footnote 5); *Nebraska:* Drabbels v. Skelly Oil Co., 50 N.W.2d 229 (Neb. 1951); *New Jersey:* Graf v. Taggert, 204 A.2d 140 (N.J. 1964); *New York:* Endresz v. Friedberg, 276 N.Y.S.2d 469 (N.Y.App. 1966); *North Carolina:* Gay v. Thompson, 146 S.E.2d 425 (N.C. 1966); *Oklahoma:* Howell v. Rushing, 261 P.2d 217 (Okla. 1953), and Padillow v. Elrod, 424 P.2d 16 (Okla. 1967); *Pennsylvania:* Carroll v. Skloff, 202 A.2d 9 (Pa. 1964), and Marko v. Philadelphia Transp. Co., 216

---

[6]In Torigian v. Watertown News Co., 225 N.E.2d 926 (Mass. 1967), the court held that a wrongful death action would lie on behalf of a child that was injured during gestation and lived only 2½ hours. The key factor is "life." The child must at some point be alive outside the mother's womb, regardless of how long it is.

A.2d 502 (Pa. 1966); *Tennessee:*[7] Hogan v. McDaniel, 319 S.W.2d 221 (Tenn. 1958), and Durrett v. Owens, 371 S.W.2d 433 (Tenn. 1963).

An analysis of the cases reveals that the courts advance the following reasons supporting recovery:

A.   If a child, injured when a viable fetus as a result of another's negligence, has a cause of action when born, then it can make no difference in liability whether death occurs just prior to or just after birth. Gorke v. Le Clerc, supra; State, Use of Odham v. Sherman, supra; Stidam v. Ashmore, supra.

B.   A viable unborn child is, in fact, biologically speaking, a presently existing person and a living human being, because it has reached such a state of development that it can presently live outside the female body, as well as within it. Mitchell v. Couch, supra; Cooper v. Blanck, supra; Verkennes v. Corniea, supra; Rainey v. Horn, supra; Fowler v. Woodward, supra.

C.   If no right of action is allowed, there is a wrong inflicted for which there is no remedy. Where negligent acts produce a stillbirth and a right of action is denied, an incongruous result is produced. For example, if a doctor acted negligently while delivering a baby and it died, the doctor would be immune from lawsuit. However, if he badly injured the child, the doctor would be exposed to liability. Under such a rule, there is the absurd result that the greater the harm, the better the chance of immunity, and the tort-feasor could foreclose his own liability. Todd v. Sandidge Constr. Co., supra; Kwaterski v. State Farm Mut. Auto. Ins. Co., supra.

Those jurisdictions which deny the cause of action advance the following reasons:

A.   A peculiar and unique wrongful death statute that predicates the action upon the death of "a person not a minor" or of certain "minor persons." Cal. Code of Civil Procedure § 377 (West 1954). The court concluded in Norman v. Murphy, supra, that "a person not a minor" meant an adult and that minority commences with birth. The Nevada statute makes no such limitation. NRS 41.080, supra.

B.   Lack of precedent. Drabbels v. Skelly Oil Co., supra. This is no longer a valid reason, since the majority of decisions now favor recovery. See Annot., 15 A.L.R.3d 992 (1967).

C.   An unborn child is a part of its mother until birth and thus has no juridical existence. Drabbels v. Skelly Oil Co.,

---

[7]Tennessee allows an action for prenatal injuries if the child is born alive and either lives or dies thereafter. Tennessee will *not* allow a wrongful death action for injuries to a fetus that is born dead. See Shousha v. Matthews Drivurself Serv., Inc., supra.

supra; Howell v. Rushing, supra; Hogan v. McDaniel, supra; Durrett v. Owens, supra. This proposition has no scientific or medical basis in fact and has been expressly rejected by numerous authorities. See Smith v. Brennan, supra.

D. The just need for compensation for deformities and increased parental responsibility resulting when the child is born alive is not present where the child is born dead, and proof of a casual connection and pecuniary loss would lead to speculation; this, in turn, would mean that damages awarded would be punitive, not compensatory. Gay v. Thompson, supra; Carroll v. Skloff, supra. Punitive damages may in appropriate circumstances be sought and recovered under the Wrongful Death Statute in Nevada. NRS 42.010.

It is true that the loss of the society, association, companionship, comfort, and affection of the decedent and the loss of acts of kindness which originate in the relationship between decedent and beneficiaries are factors which many courts deem incapable of measurement and not proper elements of damage recoverable under a "pecuniary loss" death statute. See cases collected in S. Speiser, Recovery for Wrongful Death, § 3.42, n. 7, at 210 (1966). However, many jurisdictions have construed their wrongful death statutes to permit recovery of such nonpecuniary damage. See Speiser, supra, § 3.42, n. 15.

Decisive, however, is the fact that the Nevada Wrongful Death Statute, along with the statutes of numerous other states, specifically provides that such elements of nonpecuniary loss may be recovered. *Alaska:* A.S. § 13.20.340; *Arkansas:* Ark. Stats. §§ 27–909; *Hawaii:* H.R.S. §§ 663–3; *Kansas:* K.S.A. §§ 60–1904; *Nevada:* NRS 41.090, subsection 2; *West Virginia:* W.Va. Code § 5475; *Wisconsin:* W.S.A. § 895.04; *Wyoming:* Wyo. Stats. §§ 1–1066.

Relevant is the following statement in the Law Journal of the National Association of Claimants' Compensation Attorneys:

"The death of a minor child is a deep emotional wounding, and it may be admitted that there is a decided tendency for the law to compensate for the grievous injury to family feelings involved in the death of such children or, phrased otherwise, to place a money value upon the lost companionship, deprived presence, and the co-adventuring implicit in the parent-child relationship. This enlarged view suggests that these deprivations are 'services,' financially compensable, lost to the survivors of the deceased child. The sentimental aspects of family life may be materialized without being vulgarized." 18 NACCA L.J. 378 (1956).

It is no less a loss to the survivors where, as here, the child died before birth; and it is clear that the Legislature intended that whatever loss there is should be compensated. Respondent's argument that damages would be difficult of proof does not go to the validity of a cause of action.

Accordingly, based on the trend of modern authority, we hold that a cause of action does exist for the wrongful death of an unborn 8-months-old viable fetus, and we agree with the district judge's order in denying respondent's motion to dismiss.

We also hold that William's contributory negligence, if any, may not act to bar Dorothy's recovery on the wrongful death action. Therefore, Instruction B should have been given to the jury. As the court said in Baca v. Baca, 379 P.2d 765, 770 (N.M. 1963):

"This court said in Soto v. Vandeventer, 56 N.M. 483, 245 P.2d 826, 35 A.L.R.2d 1190 that the New Mexico community property statutes are almost identical with those of Nevada. In that case we followed the Nevada court in Fredrickson & Watson Const. Co. v. Boyd, 60 Nev. 117, 102 P.2d 627 in its construction that a wife's cause of action for personal injuries to herself is not an asset of the community, and declined to follow the other community property states all holding to the contrary. Nevada has determined in Los Angeles & S.L.R.R. v. Umbaugh, supra [61 Nev. 214, 123 P.2d 224 (1942)], that the proceeds from a recovery for the wrongful death of a child by one spouse do not come within the meaning of the word 'acquired' as used in the statute defining community property as construed by Fredrickson & Watson Const. Co. v. Boyd, supra, and that the contributory negligence of one spouse, if any, is not to be imputed to the other so as to bar a recovery by the spouse who was not negligent.

. . . .

"We are of the opinion that the right of action given the husband or wife to have an action brought for the wrongful death of a child is not a community right, and that the proceeds from any recovery are not community property, as it was defined by this court in Soto v. Vandeventer, supra.

"It follows that the instruction complained of was erroneous and that the contributory negligence of one spouse, if any, is not to be imputed to the other spouse."

3. Appellant complains that the trial judge erred in refusing to instruct the jury on the last-clear-chance doctrine. Since

we have held that William's contributory negligence, if any, may not be imputed to Dorothy, the last-clear-chance doctrine has no application in the case, and it was proper not to give the instruction.

Reversed and remanded for a new trial.

COLLINS, C. J., ZENOFF, BATJER, and THOMPSON, JJ., concur.