**GREATER SOUTHEAST COMMUNITY HOSPITAL, Appellant,**

v.

**Maxine WILLIAMS, As Administratrix of the Estate of Baby Boy Williams, Appellee.**

No. 82–1655.

District of Columbia Court of Appeals.

Argued Oct. 27, 1983.

Decided Oct. 9, 1984.

Nicholas S. McConnell, Washington, D.C., with whom Richard W. Bryan, Washington, D.C., was on the brief, for appellant.

Harlow R. Case, Washington, D.C., with whom Jack H. Olender, Washington, D.C., was on the brief, for appellee.

Before NEWMAN, Chief Judge, and BELSON and TERRY, Associate Judges.

NEWMAN, Chief Judge:

This is an interlocutory appeal pursuant to D.C.Code § 11–721(d) (1981)[1] in which the sole issue is whether a fetus is a "person" under the wrongful death and survival statutes of the District of Columbia. Maxine Williams, as Administratrix of the Estate of Baby Boy Williams sought recovery under our wrongful death and survival statutes against defendants Llewelyn Crooks, M.D., and Greater Southeast Community Hospital. Williams alleged that as a result of defendants' negligent treatment of Williams' decedent, a fetus in approximately the thirty-third week of gestation, the fetus was stillborn. Greater Southeast Community Hospital filed a motion to dismiss the complaint on the grounds that no cause of action existed under the wrongful death or survival statutes because a fetus is not a "person" under the statutes. The trial court denied the motion, holding that a viable fetus is a "person" within the context of these statutes. We conclude: (1) a viable fetus has a right to be free of tortious injury; (2) a child born alive has a cause of action for such an injury; (3) a viable fetus negligently injured *en ventre sa mere* is a "person" within the meaning of our wrongful death and survival statutes. Thus, we affirm.

■ In relevant part, the District of Columbia's Wrongful Death Statute, D.C. Code § 16–2701 (1981), and Survival Statute, D.C.Code § 12–101 (1981), provide:

[w]hen ... the death of a person is caused by the wrongful act ... of a person ... and the act is such as will, if death does not ensue, entitle the person injured ... to maintain an action ... the person ... is liable to an action for damages for the death....

D.C.Code § 16–2701 (1981).

\* \* \* \* \* \*

[o]n the death of a person in whose favor ... a right of action has accrued for any cause prior to his death, the right of action ... survives....

D.C.Code § 12–101 (1981).

A cause of action for wrongful death arises only if the deceased could have brought a cause of action for injuries if death had not ensued; and a cause of action for injuries survives the deceased's death only if the cause of action accrued prior to death. Thus, inherent in the precise statutory question before us is the common law question of whether the deceased in this case could have pursued a common law action for prenatal injury had death not ensued, and whether the action accrued prior to death.

■ The first reported common law decision passing upon the right of a child to recover damages for prenatal injury was decided by Justice Oliver Wendell Holmes writing for the court in *Dietrich v. Inhabitants of Northampton*, 138 Mass. 14 (1884). Suit was brought by the administrator of a child who, as a result of the fall of his mother, was born at about four and a half months gestation and survived birth for only a few minutes. The issue was whether an unborn child was a "person" under a wrongful death statute imposing civil liability on the township. Justice Holmes recognized that a fetus was a person with legal rights under the laws of property and crime but could find no common law precedent for applying this principle to civil liability. Holmes concluded that the unborn child was a part of the mother at the time of the injury, therefore any damage to it was recoverable by the mother. *Id.* at 16.

The *Dietrich* decision and its rationale that a fetus is not a "person" with an existence apart from its mother, although severely criticized as unjust and in fact incorrect, was followed for over a half a century in the United States and England. 1 J. Dooley, Modern Tort Law § 14.02.50 (1982); W. Prosser, Law of Torts § 55 (4th ed. 1971). Judge Matthew McGuire, of this

---

**1.** By order dated March 10, 1983, this court granted permission to appeal.

jurisdiction, in the landmark case of *Bonbrest v. Kotz*, 65 F.Supp. 138 (D.D.C.1946), was the first to recognize a cause of action for prenatal injury. *Bonbrest* was a malpractice action for injuries sustained by a viable fetus, brought on behalf of a child who was born alive and who was living at the time of the action. In rejecting the *Dietrich* line of cases, Judge McGuire rested his decision on the established medical fact that a fetus is a person separate from its mother, as well as the injustice and inconsistency of denying a legal personality to a fetus under negligence law while recognizing it as a separate entity under criminal and property law. *Id.* at 140.

Although this court has never considered this question, we note that every jurisdiction in the United States has followed *Bonbrest* in recognizing a cause of action for prenatal injury, at least when the injury is to a viable infant later born alive. W. PROSSER, *supra* § 55; 1 DOOLEY, *supra* § 14.01 *et seq.;* 40 A.L.R.3d Liability for Prenatal Injuries § 1222, 1230 (1971). We adopt the *Bonbrest* rationale as the law of this jurisdiction and recognize the right of a viable fetus to be free of tortious injury and hold that a child born alive has a cause of action for such injuries. Hence, plaintiff in this case meets the common law requirement of the statutes in that, assuming the allegations in this case to be true, a negligence action for prenatal injury accrued to Baby Boy Williams at the time of injury; and had he survived, he could have maintained an action for those injuries.[2]

Having determined that a viable fetus is a "person" under the common law with the right to be free of non-fatal tortious injury, we turn now to the precise question raised in this case, *i.e.,* whether the viable fetus is also a "person" under our wrongful death and survival statutes. Appellant argues that whatever the common law liability for prenatal injury when a child is born alive,

the statutory nature of the wrongful death and survival statutes precludes liability for fatal prenatal injury. Appellant contends that the statutes must be strictly construed as derogations of the common law and that the legislature could not have intended "person" to mean an unborn child because at the time the statutes were enacted the common law did not recognize a fetus as a "person" for purposes of civil liability.

■ Contrary to appellant's contention, at least since *Calvert v. Terminal Taxicab Co.*, 48 App.D.C. 119, 121 (1918), this jurisdiction has recognized that wrongful death and survival statutes are remedial acts, to be interpreted liberally to effectuate their purposes. *See, e.g., Jones v. Pledger*, 124 U.S.App.D.C. 254, 363 F.2d 986 (1966); *Hord v. National Homeopathic Hospital*, 102 F.Supp. 792 (D.D.C.1952), *aff'd*, 92 U.S. App.D.C. 204, 204 F.2d 397 (1953). *See also Van Beeck v. Sabine Towing Co.*, 300 U.S. 342, 57 S.Ct. 452, 81 L.Ed. 685 (1937). At common law, no cause of action existed for the death of a human being, and a victim's cause of action for tortious injury was extinguished by the death of the tortfeasor or his victim. *See generally* W. PROSSER, LAW OF TORTS §§ 126, 127 (4th Ed.1971). In response to these harsh doctrines wrongful death and/or survival statutes were enacted throughout the United States to ensure that death did not relieve a tortfeasor of liability to the deceased or to the deceased's family.

■ Alleviation of the common law rules followed two separate theories, both of which have been adopted by the District of Columbia. The first is the "new cause of action" theory, represented by our wrongful death statute. This approach recognizes that the tortious killing of a person creates a financial hardship on close family members who could reasonably have expected financial support from the deceased.

---

**2.** Our holding on this point is limited to circumstances where it is alleged that the fetus was viable at the time of injury. We state no opinion as to the existence of a cause of action for injuries to a fetus prior to viability. *See, e.g.,*

*Bennett v. Hymers*, 101 N.H. 483, 147 A.2d 108 (1958) (fetus from the time of conception is a separate organism; an infant born alive has a cause of action for prenatal injuries inflicted at any time after conception).

The wrongful death statute creates a new cause of action for the deceased's spouse and next of kin to recover for their pecuniary losses, when the deceased could have brought an action for injuries had he lived. *See, e.g., Semler v. Psychiatric Institute of Washington, D.C., Inc.,* 188 U.S.App. D.C. 41, 43–44, 575 F.2d 922, 924–25 (1978).

█ The survival act, on the other hand, proceeds upon a different theory and foundation. It recognizes that liability to the victim should not be extinguished by the fortuitous event of death. The action provided for by the survival statute, therefore, does not arise from the death but from the injury itself. The act does not create a new cause of action for designated beneficiaries, but preserves for the benefit of the decedent's estate, the cause of action which the deceased would have had, had he not died. *Id.* at 925; *Jones v. Rogers Memorial Hospital,* 143 U.S.App.D.C. 51, 442 F.2d 773 (1971).

█ Although the statutes are independent causes of action focusing on different injuries, *i.e.,* the loss to the decedent's estate and the pecuniary loss to the family, both statutes are predicated upon and coexist with the presence in the deceased of a common law right to damages prior to death. Thus, absent legislative direction to the contrary, this court looks to the common law, not the statutes, to determine whether under the wrongful death statute a viable fetus is a "person injured" who could have maintained an action for damages had he lived, and whether under the survival act the fetus was a "person" to whom a cause of action accrued for injury prior to death.

Undoubtedly the legislators who originally enacted the wrongful death statutes in 1885 and the survival statute in 1785, gave no thought whatsoever to whether or not a viable fetus was a "person," given the limited medical knowledge at the time and the absence of common law jurisprudence in this area. *See, e.g., Kwaterski v. State Farm Mutual Insurance Co.,* 34 Wis.2d 14, 22, 148 N.W.2d 107, 111 (1967). More-over, recent re-enactments of the statutes give no indication that subsequent legislators have considered this question.

Modern courts, however, have given legal meaning to the word "person" by holding that a child born alive has a cause of action for prenatal injury. And just as Justice Holmes in *Dietrich, supra,* looked to the common law of 1884 to interpret the word "person," this court also looks to the common law. However, because the wrongful death and survival statutes did not "freeze" the common law, *see, e.g., Justus v. Atchison,* 19 Cal.3d 564, 586, 139 Cal.Rptr. 97, 111, 565 P.2d 122, 136 (1977) (Tobriner, J., concurring); *O'Neill v. Morse,* 385 Mich. 130, 134, 188 N.W.2d 785, 786 (1971), this court is not bound, as appellant suggests, to look only to the common-law precedents which existed prior to enactment of the statutes. To the contrary, it is *Bonbrest* and its progeny which are instructive on the question presented in this case.

Inherent in our adoption of *Bonbrest* is the recognition that a viable fetus is an independent person with the right to be free of prenatal injury. The liability for prenatal injury recognized in *Bonbrest* arises at the time of the injury. If a viable fetus is a "person injured" at the time of the injury, then perforce the fetus is a "person" when he dies of those injuries, and it can make no difference in liability under the wrongful death and survival statutes whether the fetus dies of the injuries just prior to or just after birth. To hold otherwise would perpetuate the very evils the statutes were intended to prevent—that an injury would be inflicted for which no remedy existed and a tortfeasor would escape liability by inflicting injury so severe that death results. *Accord, e.g., Eich v. Town of Gulf Shores,* 293 Ala. 95, 97, 300 So.2d 354, 355 (1974); *Mone v. Greyhound Lines, Inc.,* 368 Mass. 354, 360–61, 331 N.E.2d 916, 920 (1975). Absent clear guidance that the legislature intends such a result, this court will not read it into the statute.

In addition to the statutory arguments, appellant also contends that evidentiary problems of causation and damages support live birth as a logical line defining fetal rights. Although some courts justify denying recovery for fatal prenatal injuries on these grounds, *see, e.g., Graf v. Taggert,* 43 N.J. 303, 310–11, 204 A.2d 140, 144–45 (1964), the vast majority of courts recognize that modern medical science has facilitated the proof of causation, *see, e.g., Chrisafogeorgis v. Brandenberg,* 55 Ill.2d 368, 371–72, 304 N.E.2d 88, 90–91 (1973), or more fundamentally that difficulty of proof is not a vital basis for refusing to recognize a cause of action. *See, e.g., State v. Sherman,* 234 Md. 179, 198 A.2d 71, 73 (1964). Evidentiary problems of causation and pecuniary loss are not demonstrably more difficult when the decedent is a viable fetus than when the decedent is a child or newborn infant. Having recognized the right of a viable fetus to be free of tortious injury, this court will not draw the line for liability at live birth based on such speculative contentions concerning practical convenience.

We note that our conclusion that a cause of action exists for the tortious prenatal death of a viable fetus is in accord with the weight of legal commentary, *see, e.g.,* 1 J. DOOLEY, MODERN TORT LAW § 14.04, at 299 (1977); 1 S. SPEISER, RECOVERY FOR WRONGFUL DEATH § 4.38, at 564 n. 35 (2d ed. 1975), as well as the overwhelming majority of jurisdictions that have considered this issue. *See* 84 A.L.R.3d 411 (1978); *see also Simmons v. Howard University,* 323 F.Supp. 529 (D.D.C.1971) (decision in this jurisdiction holding that a viable fetus is a "person" under our wrongful death statute). We are persuaded not only by the number of jurisdictions that allow recovery for the death of a viable fetus under statutes similar to our own, but also with the reasoning of these decisions.

In summary, having determined that a viable fetus is a person under the common law, it follows that injury to the fetus resulting in death is actionable under our wrongful death and survival statutes. We therefore affirm the trial court's order denying dismissal for failure to state a cause of action and remand this case for further proceedings.

*Affirmed and remanded.*

TERRY, Associate Judge, dissenting:

I respectfully dissent—not on the merits, but on the ground that this court should not reach the merits. In my judgment, the issue presented in this appeal should be resolved by the legislature, not by this or any court.

I have no quarrel with the majority's decision to adopt the rule announced in *Bonbrest v. Kotz,* 65 F.Supp. 138 (D.D.C. 1946), as the law of the District of Columbia, and I would join in that decision if *Bonbrest* had any bearing on the outcome of this appeal. But *Bonbrest* does not apply to this case. The issue there, as my colleagues correctly state, was whether the law would recognize "a cause of action for prenatal injury, at least when the injury is to a viable infant *later born alive.*" *Ante* at 396 (emphasis added). The instant case, however, presents a different issue: whether a stillborn or aborted fetus has a cause of action under our survival and wrongful death statutes for the injuries which caused it to be stillborn or aborted. *Bonbrest* does not answer that question.

To decide this case the court must determine whether a stillborn fetus can be regarded as a "person" within the meaning of the survival and wrongful death statutes. Both statutes are of venerable age; the latter is almost 100 years old, the former almost 200. My colleagues infer, and I agree, that the legislatures which enacted those statutes "gave no thought whatsoever to whether or not a viable fetus was a 'person' ...." *Ante* at 397. Unlike my colleagues, however, I believe that we should not rush to fill this legislative vacuum by construing either statute in a manner beyond the contemplation of the legislature that enacted it. If this case required us to consider whether a plaintiff such as

"Baby Boy Williams" had a common-law right to bring an action for prenatal injuries, I would not hesitate to decide that question. The common law, after all, is judge-made, and judges must be free to re-examine established doctrines in the light of current knowledge and experience. That is just what the court did in *Bonbrest v. Kotz, supra.* But survival and wrongful death actions are creatures of statute, in derogation of the common law. Judges should be most reluctant to read into any such statute an interpretation which was surely not intended or even considered by the legislature, as my colleagues have done here.

The impact of the court's decision in this case cannot be underestimated. It is certainly not limited to medical malpractice claims but applies across the board to any kind of allegedly tortious conduct resulting in the "death" of a viable fetus. One can readily foresee, for example, the case of a father who, disagreeing with his wife's decision to have an abortion, files suit in the name of his aborted child against the doctor who performed it. Surely no thinking legislature would tolerate such a suit, but under the court's decision today it would be permissible. Other scenarios, equally disturbing, come quickly to mind. I fear that my colleagues, in expanding the coverage of these two statutes, have shown themselves to be worthy rivals of Pandora.

I know that most of the courts which have considered the question have ruled in favor of recognizing a cause of action on behalf of a stillborn, formerly viable fetus. But there is also a respectable line of authority to the contrary. *E.g., Kilmer v. Hicks,* 22 Ariz.App. 552, 529 P.2d 706 (1974); *Justus v. Atchison,* 19 Cal.3d 564, 565 P.2d 122, 139 Cal.Rptr. 97 (1977); *Stern v. Miller,* 348 So.2d 303 (Fla.1977); *Graf v. Taggert,* 43 N.J. 303, 204 A.2d 140 (1964); *Endresz v. Friedberg,* 24 N.Y.2d 478, 248 N.E.2d 901, 301 N.Y.S.2d 65 (1969); *Scott v. Kopp,* 494 Pa. 487, 431 A.2d 959 (1981). Many of these decisions have construed the word "person" in statutes similar to ours as excluding any fetus not born alive, usually on the ground that to hold otherwise would broaden the coverage of the statute beyond what the legislature intended. Pointing in the same direction is the Supreme Court's holding in *Roe v. Wade,* 410 U.S. 113, 158, 93 S.Ct. 705, 729, 35 L.Ed.2d 147 (1973), that "the word 'person,' as used in the Fourteenth Amendment, does not include the unborn." I agree generally with the reasoning of these decisions. I think the court should stay out of this particular thicket altogether, and leave it to the legislature to decide whether a fetus should be included within the statutory definition of a "person." That is a legislative, not a judicial issue.